CHASEZ, Judge
(dissenting).
I believe that the majority opinion in this case is incorrect and therefore I dissent. The provisions of LSA-R.S. 9:2442 et seq., do not allow a testator to make a valid will unless he has the ability to write his name. The statute is impregnated with the view that the testator must be able to-read and at least write his name. A mere-mark or sign is not enough.
In the majority opinion my colleagues, argue that if the legislature had intended to allow only persons who could write to use this form of will, it would have expressly provided for such a limitation. They alsoi point out that a proposed provision requiring the testator to have the knowledge and the ability to sign his name was deleted1 from the statute before it was finally enacted. They argue that this deletion shows that the legislature intended to allow persons who could not write their names to. use this form of will.
If this be so, it is my opinion that the legislative intent in this situation is quite ambiguous. Section 2442 provides that the testator, both witnesses, and the notary must “sign” the will. It is important to note that the same word — “sign”—is used in relation to the notary and witnesses as well as to the testator himself. If the legis *244 lature intended the word “sign” to include a testator’s mark as well as his signature, then it also must have intended to allow the witness and the notary to “sign” by means of a mark. The statute itself indicates on its face that this was not the desired result, because subsection (3) (a) of Section 2442 requires the will to end with a declaration that it was “subscribed” by the witnesses and the notary in the presence of each other and of the testator. The word “subscribed” is derived from the Latin words sub (under) and scribere (to write) ; the denotation as well as the connotation of this word is to write and not to scribble a mark. Thus the statute clearly indicates that the legislature intended that the notary and witnesses must actually write their signatures on the will. Since this is so and since the statute uses the word “sign” equally in relation to the witnesses, the notary, and the testator, it is apparent that the legislature also intended the testator be able to sign his name. Since this requirement is clear on the face of Section 2442, it is apparent that the express requirement that the testator be able to sign his name was omitted from Section 2443 as a matter of good drafting technique in order to avoid a repetitious statement of what is obvious from Section 2442.
There are other reasons for disagreement with the majority opinion. The legislature provided in Section 2444 for the probate of this form of will in situations where either or both witnesses or the notary is dead or absent from the state. In such a situation, the will may be proved by the testimony of those parties to the will who are alive and are located in Louisiana. However, if the witnesses and the notary are all dead or absent, the will may be probated upon the sworn declaration of two credible persons, “that they recognize the signature as being that of the testator.” First, it is obvious that the word “signature” is used rather than the word “mark”. Second, in the situation where the witnesses and the notary are all dead or absent, it would be impossible for two credible persons to swear that they recognize a mark or sign scribbled by someone who was unable to write his name. If the majority opinion is allowed to stand, the likelihood that forged testaments will be probated is greatly increased because of the virtual impossibility of properly identifying a mere mark or scratch as that of the testator.
The majority opinion states that if the legislature had not intended the use of this form of will by persons who cannot sign their names, it would have expressly so provided. Under our Civil Code and jurisprudence, however, there is no presumption that a will need not be signed in the absence of a contrary statutory provision. On the contrary, it is the general rule in Louisiana that all wills must be signed. The Civil Code indicates that the only wills available to those who do not know how to read and/or write are the nuncupative wills by public and private act and it is only by clear statutory expression in Article 1579 and Article 1582 of the LSA-Civil Code that a testator need not sign the nuncupa-tive will by public and the nuncupative will by private act. See Hennessey’s Heirs v. Woulfe, 49 La.Ann. 1376, 22 So. 394; and Succession of Seals, 174 La. 275, 140 So. 476. Without these express provisions, it is beyond doubt that these wills would be invalid unless signed by the testator.
It is admitted that the statutory testament is intended to be more liberal in procedural requirements than the wills designated by the Code; however, because of this liberal view certain safeguards are provided to prevent any improvident use of this form of testament; for instance, as relates to the testator’s signature, not only must the testator sign his name to the will, but must also sign “each separate sheet of the instrument.”
The importance of a decision in this case lies not primarily in relationship to the document before the court but rather lies in the recognition of such safeguards as appear in the statute to protect the makers of wills from fraud under the general provisions of this more liberal statutory form *245 of wills. It may seem apparent that full explanation of a lack of a signature by the testator in this case is given, but it must be realized that this is because the will was drawn up according to the procedure of the nuncupative testament by public act and not according to the specific procedure of the new statutory will. The testator may have been able to read, (the evidence in this record indicates that both sides labored to prove the ability, and the inability of the testator to read) although the fact that she made her mark rather than sign her name throws grave doubt on such a conclusion. And while it is not a necessary corollary that an individual who reads likewise knows how to write, in 999 cases out of 1,000 I believe that one who does not know how to write and never had known how to write, such as the testator in this case, never at any time knew how to read. But be that as it may the testament must stand or fall upon the basis of the statutory provisions which relate to that specific form of testament and the ■courts should not permit the cross-application of procedural .standards of one statute to another merely to attempt to make an invalid will valid under the particular circumstances of the particular testament.
The statute providing for this type of will is known as Act 66 of the Legislature of 1952, LSA-R.S. 9 ¡2442-2443-2444. The citators do not indicate that this statute was amended by the legislature in any manner, except to the extent set forth in Article 2887 of the Code of Civil Procedure (known as Act 15 of 1960) which reads in part as follows:
“ * * * If the notary and all of the subscribing witnesses are dead, absent from the state, or cannot be located, the testament may be proved by the testimony of two credible witnesses who recognize the signature of the testator, or of the notary, or the signatures of two of the subscribing witnesses
The comment under the Article states:
“This article is primarily an editorial revision of the source provision. A change has been made, however, to relax the rigor of the R.S. 9 ¡2444(C) so as to make it possible to probate this type of testament, when the notary and all witnesses are dead, absent, or unavailable, by proving the. signature of either the testator, the notary, or two of the witnesses.”
This alleged editorial revision is in truth and in fact a complete substantial change in the law for thereunder it now appears that persons who never knew the testator and had never seen his handwriting, or the “X” mark that he may have made, and who were not present at the confection of the instrument, may prove that a certain document is the will of a testator by merely identifying the signatures or alleged signatures of two witnesses or of the notary.
Pretermitting a discussion of the soundness of this proposition, since it is not necessary here, — if this is good law and the majority opinion here prevails, then the following circumstances could occur:
A, the testator, in making a statutory will, could place his mark thereon; B and C, the two witnesses, could likewise place their marks thereon; D, the notary, may sign his name; and two citizens from Alaska, who did not know the testator but may have been acquainted with the notary, could appear in court and say that the notary’s signature appears thereon, and thereby prove and probate the will of A.
However, even in this last quoted provision and the explanatory note, it is to be noted that it is the signature of the testator, witnesses and/or notary that must be identified.
I submit that the testator in a statutory will must be able to read and must at least know how to sign his name; and, furthermore he must attach his signature and not an “X” mark or other sign to the document.
*246 I therefore hold that this will is invalid.
Accordingly, the judgment of the lower court should be reversed; the alleged statutory will of April 1, 1955, should be declared null, void and of no effect as a testament; and the nuncupative testament by public act dated September 3, 1952 should be ordered probated, registered and executed.
Rehearing denied; CHASEZ, J., is of the opinion that a rehearing should be granted.